EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DARÍO AYALA, acusado y apelante.

Núm 6674.—*Sometido:* Febrero 1, 1938. *Resuelto:* Febrero 18, 1938.

*Benicio Sánchez Castaño,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Darío Ayala fué acusado de asesinato y convicto de asesinato en segundo grado. En apelación señala cuatro errores, pero éstos en esencia se dirigen a un solo punto, o sea, que la prueba no era suficiente para justificar al jurado a rendir un veredicto de asesinato en segundo grado, toda vez que los hechos sólo podían revelar un caso de homicidio involuntario.

■■ Del alegato del apelante aceptamos la relación que se hace de la teoría de El Pueblo, así:

"La teoría del Pueblo, y tal y como aparece esbozada de la prueba que practicó, consiste en sostener que el acusado privó de la vida al interfecto en uno de los días del mes de diciembre de 1935, bajo las siguientes circunstancias:

"Que el acusado habiendo tenido un disgusto de palabras con el interfecto había manifestado su intención de privarle de la vida. Que en la noche del 11 de diciembre de 1935, mientras el interfecto se dirigía a dormir a un sitio donde él acostumbraba hacerlo, o sea a una covacha o tormentera, sita en una finca de la Sucesión Ayala en el barrio Canovanillas, de Carolina, el acusado, so pretexto de que se creía que se trataba de un hurtador de aves, le hizo dos disparos, hiriéndole mortalmente con uno de ellos, a sabiendas el acusado que la supuesta víctima no era tal hurtador de aves y sí Andrés Ayala Flores, primo del acusado y hermano de crianza."

Por otra parte el apelante sostiene que la siguiente era su teoría:

"Por el contrario la teoría de la defensa desarrollada durante el juicio consiste en sostener que si bien es cierto que el acusado privó de la vida a Andrés Ayala Flores, lo hizo fortuitamente y al confundirlo con un hurtador de aves sin que existiera premeditación alguna en dicho acto y sin que tampoco existiera disgusto personal alguno o encono de naturaleza alguna entre el acusado y el interfecto."

Al presentarse una moción de nuevo juicio la corte dictó una opinión en la que llega a la conclusión de que como hubo suficiente prueba en que basar un veredicto éste no debe ser alterado. En la opinión aparece lo siguiente:

"Los fundamentos de la moción de nuevo juicio, tanto para el caso de asesinato como para el caso de portar armas, son los siguientes: Que el veredicto es nulo e ilegal porque la prueba no lo sostiene; que la prueba es insuficiente para sostener el veredicto; que éste es contrario a la ley; que es éste contrario a la prueba; que no hay prueba suficiente para sostener el veredicto de culpabilidad; que la evidencia no demuestra que el acusado actuara con malicia y premeditación de modo que el jurado pudiera rendir un veredicto de asesinato en segundo grado y por último, que la única prueba sobre premeditación y malicia es la declaración de Trinidad Ayala, hermana del interfecto, y cuya declaración por sí sola no es suficiente, por ser dicha declaración remota, parcial y llena de prejuicios."

También hubo prueba tendente a demostrar una amenaza por parte del acusado si el occiso se presentaba borracho a la casa de éste y molestaba la madre y hermana del acusado. El finado había vivido en la casa del acusado y se dirigía al lugar en que tenía por costumbre dormir cuando recibió los disparos. El fiscal analiza el testimonio de otros testigos tomado durante el juicio, incluyendo el del propio acusado y sostenemos que El Pueblo probó, como elemento del delito, la deliberación a tal extremo que el jurado estaba justificado en rendir, fuera de duda razonable, el veredicto que rindió. Varios testigos corroboraron a Trinidad Ayala, de ser la corroboración aún moralmente necesaria.

Cuando la muerte es el resultado de un mero accidente y no hubo la intención de herir a nadie, o de apuntar en la dirección en que se hallaba el occiso, una corte debe darle al jurado la oportunidad de declarar al acusado culpable de homicidio o quizá limitar el veredicto a ese delito. Véanse los casos citados por el apelante, por ejemplo, *Parks* v. *State*, 31 S. E. 580; *State* v. *Vance*, 17 Iowa 138.

En los autos hallamos la siguiente solicitud de instrucción, que fué concedida:

"Si vosotros, caballeros del jurado, llegáis a la conclusión de que el acusado privó de la vida a Andrés Ayala, por no haber actuado con la debida prudencia y circunspección al disparar un arma de fuego, entonces debéis declarar al acusado culpable del delito de homicidio voluntario."

La instrucción, por sí sola, es más favorable que lo que el acusado tenía derecho a esperar. Esto fué subsanado, a nuestro juicio, por las instrucciones realmente dadas y el apelante no señala error en lo que a ellas se refieren.

Con mayor provocación para excitar al acusado hemos resuelto recientemente que el manipular con intención criminal una caja registradora en el establecimiento del acusado no justificaba a éste disparar contra el finado *(El Pueblo* v. *Torres,* ante, pág. 500).

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.